# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **LAWRENCE D. BRILEY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-11-215-FHS-SPS** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of the Social** | ) | |
| **Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

The claimant Lawrence D. Briley requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision should be REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations

implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§

404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision

to two inquiries: whether the decision was supported by substantial evidence and whether

correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th

Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.'"

*Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v.*

*NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th

Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the

Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799,

800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he

substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step One requires the claimant to establish that he is not engaged in substantial gainful activity. Step Two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born August 21, 1957, and was fifty-two years old at the time of the administrative hearing. (Tr. 26). He completed the eleventh grade (Tr. 26, 142), and has worked as a backhoe operator and painter (Tr. 16). The claimant alleges inability to work since December 24, 2008, due to emphysema and arthritis. (Tr. 137-138).

## Procedural History

On January 12, 2009, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. His applications were denied. ALJ Trace Baldwin conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated June 21, 2010. (Tr. 12-18). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant retained the residual functional capacity (RFC) to perform the full range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b). (Tr. 14). The ALJ concluded that although the claimant could not return to his past relevant work, he was

nevertheless not disabled under Rule 202.11 of the Medical-Vocational Guidelines, *i. e.*,

"the Grids." (Tr. 17).

## Review

The claimant contends that the ALJ erred by (i) applying the Grids to determine he

was not disabled and (ii) failing to perform a proper credibility analysis.[2] In support of

his first contention, the claimant argues that his non-severe mental impairment combined

with his advancing age precluded application of the Grids, and that the ALJ further

ignored significant probative aspects of the opinion of post-hearing consultative examiner

Dr. Gordon B. Strom. The undersigned Magistrate Judge finds that the ALJ *did not*

properly apply the Grids, and the decision of the Commissioner should therefore be

reversed.

"The grids" are rules promulgated by the Commissioner for determining disability

based on a claimant's RFC category, age, education and work experience. *See Channel

v. Heckler,* 747 F.2d 577, 579-80 & n.3 (10th Cir. 1984) (per curiam). An ALJ may rely

conclusively on "the grids" to find that a claimant is not disabled if: (i) the claimant has

no significant nonexertional impairment; (ii) the claimant can do the full range of work at

some RFC level on a daily basis; and (iii) the claimant can perform most of the jobs in

that level. "Each of these findings must be supported by substantial evidence."

*Thompson v. Sullivan*, 987 F.2d 1482, 1488 (10th Cir. 1993). Thus, use of "the grids" is

inappropriate if a claimant has a nonexertional impairment, unless the evidence supports

---

[2] Plaintiff also argued in his Opening Brief that the ALJ also failed to provide him a supplemental hearing after the production of post-hearing medical reports, but has since conceded that Plaintiff was given the opportunity and declined. (Tr. 86, 170).

a finding that such impairment is insignificant. *Id.* at 1490-91; 20 C.F.R., pt. 404, subpt. P, app.2, § 200.00(e). If an ALJ cannot rely conclusively on "the grids," he "must cite examples of occupations or jobs the individual can do and provide a statement of the incidence of such work in the region where the individual lives or in several regions of the country." Soc. Sec. Rul. 96-9p, 1996 WL 374185, at *5

The ALJ found that the claimant had the severe impairments of emphysema, arthritis, degenerative disc disorder of the back, and chronic obstructive pulmonary disease, as well as the non-severe mental impairment of depression. (Tr. 12-13). At the administrative hearing, the claimant testified as to his impairments and attributed his inability to work to his problems with breathing, which also created difficulties when he tried to walk further than half a block. (Tr. 29). He stated that he takes asthma medications, as well as medications for his neck/back pain and arthritis. (Tr. 30). He explained that the pain in his neck and back makes him feel tired and has a dull pain that will become sharp when it moves up and down his arms and that his neck gets really stiff. (Tr. 31-32). Additionally, he stated that his pain is daily, and that he feels it three to four times a day. (Tr. 32). He stated he did not believe he could lift more than ten pounds repetitively, that he can sometimes bend, squat, and kneel but never crawl, and that he sometimes has trouble with walking up stairs. (Tr. 32). The claimant also testified that he is a smoker and that he smokes less than he used to because he cannot afford it. (Tr. 32). He also testified that he struggles with stress, and that he gets angry more frequently than he used to. (Tr. 36-37).

Following the administrative hearing, the ALJ ordered two consultative examinations. Dr. Strom's impressions were that the claimant had been in a prior motor vehicle accident with likely degenerative arthritis at least involving the left shoulder, mechanical low back strain by history, minimal conductive hearing loss, and chronic airways obstruction secondary to smoking. (Tr. 219). Dr. Strom noted that the claimant would benefit from smoking cessation and long-acting bronchodilators, then recommended that the claimant would benefit from a "more sedentary type of occupation if made available to him." (Tr. 219). He further stated that, "It is not my impression that this patient is limited form all job performance, but stooping, bending, or lifting would be limited. He does have chronic lung disease, but has significant improvement with bronchodilators." Dr. Crittendon conducted a mental status examination and noted his diagnostic impressions as learning disorder NOS (including significant math difficulties), noncompliance with treatment for depression, adjustment disorder with depressed mood (noting that the depression was due to current circumstances and seemed situation-appropriate), borderline intellectual functioning, COPD, continuous cold and sinus problems, arthritis, hypertension, vision, and that the claimant had medical, employment, and financial difficulties along with some social isolation. (Tr. 246). After assigning the claimant a Global Assessment of Functioning Score of 65, Dr. Crittendon noted that the claimant's prognosis could be considered favorable at the current level and with no further treatment. (Tr. 246).

The ALJ finding that the claimant had the RFC to perform the full range of light work was based on the opinions of State Agency reviewing physicians, whose opinions

predate the consultative examinations ordered by the ALJ following the administrative hearing. Although noting that Dr. Strom had reviewed the claimants records from Kiamichi Medical Center, the ALJ gave Dr. Strom's opinion little weight because it was "self-reportedly based solely on claimant's subjective complaints." (Tr. 16). In fact, Dr. Strom referred to the claimant's own complaints and statements as to the medical history several times, but also stated that he had "reviewed all [claimant's] medical records," including all records from the Kiamichi Family Medical Center and particularly those notes as to the claimant's airway obstruction and possible restrictive defect. (Tr. 217-218). The ALJ made no mention of the claimant's non-severe mental impairment at step four. The claimant thus contends that the ALJ erred in applying "the grids" to determine he was disabled because his mental impairments were not addressed at step four and because the ALJ found that he had the severe impairments of arthritis and degenerative disc disorder of the back. Both of these arguments have merit.

Despite finding that the claimant suffered from severe pain-inducing impairments, the ALJ *failed to evaluate or even mention* the effect of these pain-inducing impairments upon the claimant's RFC. "Pain, even if not disabling, is still a nonexertional impairment to be taken into consideration, unless there is substantial evidence for the ALJ to find that the claimant's pain is insignificant." *Thompson*, 987 F.3d at 1490-91*, citing Ray v. Bowen*, 865 F.2d 222, 225 (10th Cir. 1989) and *Gossett v. Bowen*, 862 F.2d 802, 807-08 (10th Cir. 1988). *See also Baker v. Barnhart*, 84 Fed. Appx. 10, 13 (10th Cir. 2003) (finding ALJ's step-two finding made it impossible for him to conclude at step four that claimant's pain was insignificant, and he erred by conclusively relying on the grids)

[unpublished opinion]. In assessing allegations of pain, an ALJ "must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a 'loose nexus' between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling." *Musgrave v. Sullivan*, 966 F.2d 1371, 1375-76 (10th Cir. 1992), *citing Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987). Further, "the ALJ may not rely on minimal daily activities as substantial evidence that a claimant does not suffer disabling pain." *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993), *citing Frey*, 816 F.2d at 516. Because there was objective evidence that the claimant has pain-producing impairment, *i. e.*, arthritis and degenerative disc disorder of the back, the ALJ was thus required to consider the claimant's allegations of pain and the extent to which they were disabling. Here, the ALJ entirely failed to account for the claimant's pain (disabling or otherwise) in formulating his RFC and determining what work, if any, with his level of pain. *See, e. g., Harrison v. Shalala*, 28 F.3d 112, at *5 (10th Cir. 1994) (unpublished table opinion) ("If the ALJ finds that plaintiff's pain, by itself, is not disabling, that is not the end of the inquiry. The [Commissioner] must show that jobs exist in the national economy that the claimant may perform *given the level of pain [he] suffers.*") [citation omitted]. This would ordinarily require the opinion of a vocational expert, *see, e. g., id.* at *5, but the ALJ did not even question a vocational expert at the administrative hearing.

Additionally, the ALJ erred by failing to consider the effect of the claimant's non-severe mental impairment at step four. *See also Hill v. Astrue*, 289 Fed. Appx. 289, 292

(10th Cir. 2008) ("Once the ALJ finds that the claimant has any severe impairment, he has satisfied the analysis for purposes of step two. His failure to find that additional alleged impairments are also severe is not in itself cause for reversal. But this does not mean the omitted impairment simply disappears from his analysis. In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [emphasis in original] [citations omitted].

Because the ALJ failed to properly account for both the claimant's pain and his non-severe mental impairment, the decision of the Commissioner should be reversed and the case remanded for further analysis of the claimant's impairments. If this results in adjustments to the claimant's RFC, the ALJ should then re-determine what work, if any, the claimant can perform and ultimately whether he is disabled.

### Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The undersigned Magistrate Judge thus RECOMMENDS that the Court reverse the decision of the Commissioner and remand the case for further proceedings. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 7th day of September, 2012.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma